**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal Nos. RDB-24-166** |
| | * | |
| **CAMERON JONES** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>

The Government submits this Sentencing Memorandum in advance of Defendant Cameron Jones' sentencing hearing, currently scheduled for Tuesday, July 28, 2026 at 2:30 p.m. The Defendant faces sentencing for one count of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count One). Count One has a statutory maximum of 15 years' imprisonment. The applicable guidelines range with acceptance of responsibility is 84 to 105 months' imprisonment based on an adjusted offense level of 23 and the established criminal history category of V. *See* Pre-Sentence Investigation Report ("PSR") at ¶¶ 23, 44.

For the reasons that follow, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) this Court should impose a total sentence of 70 months' imprisonment, followed by three years of supervised release.

1

## I.    BACKGROUND

### A.    Defendant's Conduct[1]

On January 19, 2024, the Baltimore Police Department ("BPD") attempted to initiate a stop of Cameron Jones ("Jones") based on an active arrest warrant. A BPD detective pulled his unmarked police vehicle behind Jones' vehicle, which was parked near the curb, and activated his emergency lights. The Officers believed that Jones attempted to flee by reversing his vehicle and striking the unmarked Baltimore City Police vehicle. The Officers believed that Jones then attempted to flee again by driving forward, striking a parked Honda Civic. The BPD detective pulled the marked vehicle forward to block Jones' escape.

The BPD detective then exited the marked patrol vehicle and gave strong verbal commands for Jones to get out of the car. As a result of those commands, the Officer believed that Jones attempted to flee by driving the vehicle up onto the curb. The BPD detective was able to break the driver's side window and made multiple attempts to gain control of Jones' hands while Jones was moving the vehicle back and forth in a continued attempt to escape. Jones reversed the vehicle off of the curb, striking the BPD detective with the driver-side door. The BPD detective deployed a departmentally issued Taser, striking Jones who was still in the driver's seat. BPD detectives were then able to extract Jones from the driver's seat and place him in handcuffs. Additionally, some of the detectives were injured during the interaction.

According to the BPD detectives, the entire time that Jones attempted to flee from officers, a female passenger and four-year-old child were in the car. The child was not secured in a car seat or with a seat belt. The government believes that Jones' attempts to flee law enforcement created

---

[1]    The conduct described herein is consistent with the Stipulation of Facts set forth in Attachment A of the parties' plea agreement.

a substantial risk of death or serious bodily injury to another person.  Jones disputes that he created any substantial risk of death or serious bodily injury or that he attempted to flee in anyway.

While Jones was handcuffed, the BPD detective recovered from Jones' jacket pocket a loaded Sccy Industries model CPX-2 9mm pistol bearing serial number C157603 and was loaded with approximately ten rounds of 9mm ammunition.

The handgun was test-fired and found to be operable, thereby meeting the definition of a firearm pursuant to 18 U.S.C. § 921(a)(3). The ammunition also meets the definition of ammunition pursuant to 18 U.S.C. § 921(a)(17)(A). Prior to possessing the firearm, on January 19, 2024, Jones had been convicted of crimes punishable by imprisonment for a term exceeding one year, his civil rights had not been restored, and he had knowledge of this status when he possessed the firearm and ammunition. Both the firearm and ammunition that Jones possessed affected interstate commerce, as they were manufactured outside of the State of Maryland.

## II.   ADVISORY GUIDELINES CALCULATION

On May 5, 2026, the Defendant pled guilty to Count One of the Indictment. ECF No. 64 (Plea Agreement). A Pre-Sentence Investigation Report ("PSR") was completed by the U.S. Probation and Pretrial Services Office on June 10, 2026. The PSR calculates a base offense level of 24 for the Defendant's conviction pursuant to U.S.S.G. § 2K2.1(a)(4)(A) because the Defendant committed the instant offense subsequent to sustaining two felony convictions for controlled substance offenses. PSR at ¶ 19.  The parties dispute whether the offense level should be increased pursuant to U.S.S.G. § 3C1.2, because the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The government reserves the right to seek such an increase of up to 2 levels, and the defendant

3

reserves the right to oppose any such adjustment. PSR at ¶ 23.  Therefore, his adjusted offense level is 26.  PSR at ¶ 24.

Following a three-level downward adjustment pursuant to U.S.S.G. § 3E1.1 for the Defendant's prompt acceptance of responsibility, the Defendant's final adjusted offense level is 23. *See* PSR at ¶¶ 26-28. The PSR further calculates a criminal history category of V based on 12 criminal history points. PSR at ¶ 44. Accordingly, the applicable advisory guidelines range for sentencing is 84 to 105 months.  If the Court were to not find the enhancement, then his adjusted base offense level with the three-level downward adjustment would be 21 and his advisory guidelines range for sentencing is 70 to 87 months.

## III.    LEGAL STANDARD

In *United States v. Booker*, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] […] to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns.  *United States v. Booker*, 543 U.S. 220, 245 (2005); *see* 18 U.S.C. § 3553(a). In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court explained the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. at 49 (citation omitted).

Next, a sentencing court should "consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the sentencing court] may not presume that the Guidelines range is reasonable.  [The sentencing court] must make an individualized assessment based on the facts presented."  *Id*. at 49-50 (citation and footnote

omitted).  The Court ultimately must impose a sentence that is "sufficient, but not greater than necessary" to "reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

## IV.    ARGUMENT

A sentence totaling 70 months of imprisonment, followed by 3 years of supervised release, is necessary to account for the seriousness of the offense, the need to protect the public, the history and characteristics of the Defendant, and the need to avoid unwarranted sentencing disparities.

Regarding the nature of the offense, the Defendant's actions clearly warrant a sentence that will account for a lengthy prison term.  His possession of a loaded firearm was not only dangerous to the community, but also to himself and the occupants in his vehicle to include a four-year-old child.[2]  Furthermore, his actions during the traffic stop were egregious.  As noted in the stipulated facts of the plea agreement, during the traffic stop, the Defendant attempted to flee by reversing his vehicle and striking the unmarked Baltimore City Police vehicle.  Though the officers gave verbal commands to the Defendant to stop what he was doing and get out of the car, he ignored those commands and instead continued to attempt to flee by trying to drive up on the curb.  All of this was occurring while a woman, believed to be his girlfriend and her child were in the front passenger seat.  Below if a screenshot from the officer's body worn camera of his child and woman

---

[2]    During the body worn camera footage, he refers to the child as his son, but the Pre-Sentence Report does not indicate he has any children.

in the front seat after the Defendant was arrested.  She is visibly upset and is holding the child who

is wearing red boots.



The scene was unnecessarily chaotic because the Defendant refused to follow simple

commands by the officers.  The body worn camera footage clearly shows that the Defendant

refused to listen to the officers and continued to place the officers and himself and the child and

his girlfriend in harm's way.  *See* Exhibit 1.[3]

At one point, as noted in the stipulated facts, the BPD detective was able to break the

driver's side window and made multiple attempts to gain control of Jones' hands while Jones was

moving the vehicle back and forth in a continued attempt to escape.  Jones reversed the vehicle off

of the curb, striking the BPD detective with the driver-side door.  The BPD detective deployed a

---

[3]     For purposes of this memorandum and for the Court's review, the government has provided an excerpt from the body worn camera.  The relevant portions in this Exhibit are from the beginning until around minute 4.

departmentally issued Taser, striking Jones who was still in the driver's seat.  BPD detectives were then able to extract Jones from the driver's seat and place him in handcuffs.

During the several minutes that the Defendant attempted to flee, the child was in the front passenger seat, not secured in a car seat or with a seat belt.  The government believes that Jones' attempts to flee law enforcement created a substantial risk of death or serious bodily injury to another person.  Though Jones disputes that he created any substantial risk of death or serious bodily injury or that he attempted to flee in anyway, the Defendant's actions speak volumes.

Additionally, though not noted in the stipulation of facts, additional items were recovered from the Defendant that included a small amount of cocaine (less than 1g), 71 pills of Oxycodone, 9 pills of methamphetamine and buprenorphine along with a digital scale.  The Defendant was not charged with those items, but the Court should be made aware of his possession of them, nevertheless.

Regarding the Defendant's criminal history, the Defendant has incurred multiple convictions since the age of 18, and he had several juvenile adjudications as well.  PSR at ¶¶ 36-41.  His prior convictions include a CDS possession and failure to immediately stop after an accident involving bodily injury (2017).  During that incident, he fled from police striking a woman walking her grandchildren through an intersection.  PSR at ¶ 35.  According to the statement of probable cause she was injured and a medic was called.  *Id.*  He was also charged with rogue and vagabond (2018) but the facts portrayed the incident as more of a burglary offense.  PSR at ¶ 36.  Following that conviction, he was convicted of additional charges that include two more drug possession charges (2019, 2020), a discharging of a firearm (2020), driving without a license and attempt to elude police (2023) and attempt to distribute narcotics (2023).   For the last offense, he was still on probation at the time of the instant offense and his probation was revoked. PSR at ¶

41.   The Defendant's criminal history is thus lengthy and demonstrates a propensity for illegal behavior.

Though he has had many convictions, none of those convictions resulted in any significant terms of imprisonment.   Thus, the proposed 70-month sentence will be the longest period of incarceration ever served by the Defendant. The Government, therefore, submits that the sentence is appropriate to balance the serious nature of the offense and the Defendant's criminal history.

## V.   CONCLUSION

A sentence of 70 months imprisonment with the Bureau of Prisons is necessary in this case to reflect the seriousness of the offense.   This sentence would promote respect for the law and provide just punishment for this offense.

Deterrence is another factor for the Court to consider.   The Defendant's possession of a firearm loaded with approximately ten rounds of 9mm ammunition is serious and is a significant risk to the community. A sentence of 70 months would protect the public from the kinds of danger implicit in the possession of guns by felons.   The Government believes that the Defendant's conduct, in combination with his character and history, is adequately reflected by the recommended sentence, and further believes that such a sentence is sufficient to provide both a general deterrent and specific deterrent effect.   As such, a sentence of 70 months is reasonable and balanced considering the above factors.   The Government believes that in this case, a sentence of 70 months is sufficient but not greater than necessary to achieve the required purposes of sentencing.

For all of the foregoing reasons, the Government respectfully requests that the Court impose upon the Defendant, Cameron Jones, a sentence of 70 months of imprisonment with the Bureau of Prisons.  The Government thanks the Court for its consideration of this matter.


Respectfully submitted,


Kelly O. Hayes
United States Attorney

By:        _____/s/_____
LaRai Everett
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 24, 2026, a copy of the foregoing Memorandum was delivered via ECF to Brian Murphy, counsel for the Defendant.

By: _____/s/_____
LaRai Everett
Assistant United States Attorney